IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| ROTONDO WEIRICH ENTERPRISES, INC. | : | BANKRUPTCY NO. 15-16146(ELF) |
| | : | |
| Debtor | : | |
| | : | |
| In re: | : | CHAPTER 11 |
| | : | |
| ROTONDO WEIRICH, INC. | : | BANKRUPTCY NO. 15-16147(ELF) |
| | : | |
| Debtor | : | |
| | : | |
| In re: | : | CHAPTER 11 |
| | : | |
| THREE NORTH POINTE ASSOCIATES, LLC | : | BANKRUPTCY NO. 15-16148(ELF) |
| | : | |
| Debtor | : | |
| | : | |
| In re: | : | CHAPTER 11 |
| | : | |
| RW LEDERACH, LLC | : | BANKRUPTCY NO. 15-16149(ELF) |
| | : | |
| Debtor | : | |
| | : | |
| In re: | : | CHAPTER 11 |
| | : | |
| RW 675, LLC | : | BANKRUPTCY NO. 15-16150(ELF) |
| | : | |
| Debtor | : | |
| | : | |
| In re: | : | CHAPTER 11 |
| | : | |
| RW MOTORSPORTS, INC. | : | BANKRUPTCY NO. 15-16151(ELF) |
| | : | |
| Debtor | : | |

**DEBTORS' MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §363(c)
AND FED.R.BANKR.P. 4001, AUTHORIZING DEBTORS TO USE CASH
<u>COLLATERAL AND PROVIDE ADEQUATE PROTECTION</u>**

Rotondo Weirich Enterprises, Inc. ("RWE"), Rotondo Weirich, Inc. ("RWI"), Three North Pointe Associates, LLC ("3NP"), RW Lederach, LLC ("RWL"), RW 675, LLC ("RW675") and RW Motorsports, Inc. ("RWM"), each a debtor and debtor-in-possession in the above captioned chapter 11 cases (RWE, RWI, 3NP, RWL, RW675 and RWM are collectively referred to as the "Debtors"), by and through their proposed counsel, Maschmeyer Karalis P.C., hereby move this Court, pursuant to §363 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for an Order Pursuant to 11 U.S.C. §363(c) and Fed.R.Bankr.P. 4001, Authorizing Debtors to Use Cash Collateral and Provide Adequate Protection, (the "Motion") and in support thereof, aver as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of the Debtors' Chapter 11 cases and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested herein are §363 of the Bankruptcy Code and Rule 4001 of the Bankruptcy Rules.

i.
## BACKGROUND

2. On August 27, 2015 (the "Petition Date"), the Debtors filed voluntary petitions for relief pursuant to Chapter 11 of Title 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have remained in possession of their assets and continue in the management of their businesses as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

3. A detailed description of the Debtors' businesses and the facts precipitating the filing of the Debtors' Chapter 11 proceedings is set forth in the Declaration of Steve J. Weirich

in Support of First Day Motions. Those facts, to the extent relevant, are incorporated herein by reference.

4.      No trustee or examiner has been appointed in these cases. No official committee of unsecured creditors has been appointed in these cases.

### PRE-PETITION FINANCING FROM UNIVEST BANK AND TRUST CO.

5.      As of the Petition Date, the Debtors' secured obligations due Univest Bank and Trust Company ("Univest Bank") are approximately $4.4 million and consisted of, among other things, revolving credit facilities, and two term loans. The obligations due Univest Bank are as follows:

   a.   <u>Revolving Credit Facility</u>. On November 17, 2008, RWE entered into that certain Credit Agreement (the "Univest Line of Credit") with Univest Bank, providing for a revolving credit facility of up to $4.0 million, as amended. As of the Petition Date, outstanding principal obligations under the Univest Line of Credit were approximately $4.0 million.

   b.   <u>RW 675 Term Loan</u>. On March 26, 2009, RW 675 executed and delivered to Univest Bank a Promissory Note in the original principal amount of $318,750, as amended (the "RW 675 Term Loan"). As of the Petition Date, outstanding principal obligations under the RW 675 Term Loan were approximately $218,738.

   c.   <u>RWL Term Loan</u>. On April 30, 2013, RWL executed and delivered to Univest Bank a Promissory Note in the original principal amount of $450,000, as amended (the "RWL Term Loan"). As of the Petition Date, outstanding principal obligations under the RWL Term Loan were approximately $124,033.

6.      Univest Bank asserts that the Univest Line of Credit, the RW 675 Term Loan, and the RWL Term Note (collectively, the "Pre-Petition Credit Facilities") are secured by all assets

of the RWE debtor, and the real estate owned by RWL and RW 675, and any proceeds and products of the foregoing located in all business locations. Debtors' counsel is reviewing the Univest Bank loan documents and has not yet had adequate time to confirm the extent, validity and priority of the Univest Bank liens and interests.

7. Univest Bank also asserts that all of the Debtors, and others, guaranteed the Pre-Petition Credit Facilities.

8. A review of the Univest Bank Pre-Petition Credit Facilities is ongoing. That being said, Univest Bank asserts that it is secured by a majority of the real and personal property owned by the Debtors.

9. The Debtors' primary assets are cash, accounts receivable, machinery, equipment, and real estate.

10. The Debtors have been in discussions with Univest Bank to reach a consensual agreement on the Debtors' use of cash collateral and the adequate protection to be afforded to Univest Bank after the Petition Date. However, in the event no agreement is reached, the Debtors are requesting that the Court authorize the use of cash collateral.

11. The Debtors, in the normal course of their businesses, incur obligations to suppliers, for a variety of goods and services, and their employees which are essential to the continued existence of the Debtors as going concerns. Absent the immediate authority to use their cash, the Debtors do not have the funds with which to conduct business.

12. The Debtors require an immediate hearing to at minimum authorize the use of cash collateral for immediate expenditures and operating expenses. The Debtors are currently preparing a budget for their projected cash receipts and disbursements which will be submitted prior to the hearing on this Motion (the "Budget").

13. Moreover, the Debtors' next payroll comes due on September 4, 2015. An abrupt cessation of the Debtors' businesses would cause extreme hardship to the Debtors' customers, their numerous creditors, and their employees. Simply stated, in order to continue the operation of the Debtors' businesses, it is necessary for the Debtors to immediately be authorized to use their cash collateral.

14. It is also crucial that the RWE Debtor's post-petition payroll obligations be paid as these obligations come due.

15. The RWE Debtor must maintain its relationship with its employees so that the essential services they provide are uninterrupted. If the RWE Debtor's present employees terminate their employment, the RWE Debtor will be forced to hire new, untrained employees. As a result, clients will receive less than satisfactory service. The Debtors will suffer negative publicity and Debtors' relationship with their creditors could also be jeopardized.

## RELIEF REQUESTED

### A. USE OF CASH COLLATERAL

16. The Debtors request that the Court authorize the Debtors to use (a) cash, (b) proceeds of the pre-petition collateral, and (c) such other funds that the Debtors obtain post-petition which may be subject to Univest Bank's pre-petition security interest.

17. The Debtors request authority to use cash collateral in the amount to be set forth in the Budget. The use of cash collateral is necessary in order for the Debtors to be able to operate and pay their post-petition obligations as they come due.

18. Approval of the Debtors' request to use cash collateral is in the best interest of the Debtors, their estates and creditors.

19. In accordance with Bankruptcy Rule 4001, the Debtors request that the use of cash collateral first be preliminarily approved and then subsequently be finally approved at a subsequent hearing upon further notice to parties in interest.

20. In accordance with Bankruptcy Rule 4001, the Debtors request that the final hearing be scheduled so that at least fourteen (14) days-notice has been provided to parties in interest.

21. The Debtors' counsel is still reviewing all of the relevant loan documents to determine the extent of Univest Bank's security interest in the Debtors' assets.

22. The entry of any Order authorizing the use cash collateral is without prejudice to the rights of the Debtors, their creditors, any trustee appointed herein, or other party in interest, to contest the validity, extent or priority of any rights granted pursuant to the Credit Facilities or any security interest arising out of or related to Credit Facilities.

23. Neither the Debtors' use of cash collateral nor any payments that may be authorized by the Court to Univest Bank constitute a waiver by Univest Bank or the Debtors or any other party in interest of any right or claim each may now have or in the future have with respect to any issue relating to the validity, extent or priority of Univest Bank's security interests.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**WHEREFORE,** the Debtors respectfully request that the Court (i) enter an Order at the time of the hearing granting the relief requested herein and (ii) grant such other and further relief as this Court may deem just and proper.

**Respectfully submitted,**

**MASCHMEYER KARALIS P.C.**

By: ___/s/ Aris J. Karalis_____
    ARIS J. KARALIS
    ROBERT W. SEITZER
    1900 Spruce Street
    Philadelphia, PA 19103
    (215) 546-4500
    Proposed Attorneys for the Debtors

Dated: August 28, 2015